

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2006

# USA v. Schweitzer

Precedential or Non-Precedential: Precedential

Docket No. 05-1301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Schweitzer" (2006). *2006 Decisions.* Paper 664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1301

———

UNITED STATES OF AMERICA

v.

LEO F. SCHWEITZER, III,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00451)
District Judge:  Honorable James K. Gardner

———

Submitted Under Third Circuit LAR 34.1(a)
June 12, 2006

Before:  FISHER, GREENBERG and LOURIE,[*] *Circuit
Judges*.

———

[*]The Honorable Alan D. Lourie, United States Circuit
Judge for the Federal Circuit, sitting by designation.

(Filed: July 11, 2006)

Amara S. Chaudhry
527 Swede Street
Norristown, PA  19401
        *Attorney for Appellant*

Christopher R. Hall
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
        *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

The record of a case provides the only window by which an appellate court can survey the underlying proceedings, to assess claims of error and the legality of judgment. Development of that record is thus of critical importance, a principle illustrated by this case.  Through an extensive plea colloquy and detailed statement of reasons, the District Court created a record that demonstrates both the validity of the guilty plea and the reasonableness of the final, above-guidelines sentence.  We will affirm.

2

I.

A.

Leo F. Schweitzer, III, has a two-decade history of defrauding the Department of Defense. The ill-fated relationship began in the early 1980s, when Schweitzer agreed to supply military contractors with manufactured components for construction and production. The materials that he provided were, however, defective and of little value. Schweitzer pled guilty in 1985 to mail fraud and making false statements, and he was sentenced to fifteen years' imprisonment, to be followed by a term of supervised release. The District Court also enjoined Schweitzer, as a special condition of release, from engaging in contractual arrangements with the United States, either directly or indirectly.

The admonition had little effect. Soon after Schweitzer was paroled in 1990, he and a cohort secured new government supply contracts worth nearly $800,000. They filled these orders through a series of front businesses, which were used to procure the necessary goods on credit from third parties and were then closed when payment was demanded. The scheme was eventually uncovered, and Schweitzer pled guilty in 1995 to conspiracy, making false statements, and money laundering. His parole was revoked, and he was sentenced to forty-one months' imprisonment. Once again, the District Court barred Schweitzer from contracting with the United States, either directly or indirectly.

Once again, the order was ignored. Schweitzer was released from custody in 1999 and quickly launched another plot involving contracts with the Department of Defense. As in the prior scheme, he and a coconspirator used a series of front businesses, nominally controlled by friends and family members, to obtain goods on credit for resale to the government. The conspirators profited from the venture, but the third-party suppliers were never paid. Schweitzer was arrested in 2003 and charged by indictment with multiple counts of wire fraud, mail fraud, and making false statements.

B.

Schweitzer initially entered a plea of not guilty, and a jury trial commenced in August 2004. However, on the tenth day of trial, Schweitzer indicated that he had reached an agreement with the prosecution and wished to plead guilty to thirty-three counts of mail fraud, wire fraud, and making false statements.

1.

A change of plea hearing was held on September 13, 2004. The District Court asked Schweitzer whether he was satisfied with his representation and had been given adequate time to discuss the case with his attorney. Schweitzer responded in the affirmative. The District Court then asked Schweitzer whether he had read the plea agreement "entirely," had understood "everything in there," and had "fully gone over" the document with his attorney. Schweitzer again responded in the affirmative.

4

The District Court addressed in detail the provisions of the plea agreement. The agreement states that the "total statutory maximum sentence" to which Schweitzer will be exposed by his plea is 165 years' imprisonment. It also recites a number of stipulations to which the parties had agreed for purposes of sentencing, including that "the defendant has [nine] criminal history points, resulting in a Criminal History Category IV." However, it acknowledges that "these stipulations are not binding upon either the Probation Department or the Court" and that "[t]he defendant may not withdraw his plea because the Court declines to follow any . . . stipulation by the parties to this agreement."

The agreement also includes a broad waiver of appellate rights. It provides that "the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." The only exceptions are for claims that "the defendant's sentence exceeds the statutory maximum" or that "the sentencing judge erroneously departed upward from the otherwise applicable sentencing guidelines range." The agreement specifically states that, "[i]f the defendant does appeal pursuant to [one of these exceptions], no issue may be presented by the defendant on appeal other than those described in [these exceptions]."

The District Court recited these provisions on the record and confirmed that Schweitzer understood each of them. It advised Schweitzer that, although the defense and the

5

prosecution "can agree on facts . . . [and] make recommendations . . . at sentencing," the Court is not bound by those stipulations and that, regardless of the Court's findings, the plea "is still binding on you." It admonished: "[N]o one can guarantee you what sentence you will get from me." It recounted the charges to which Schweitzer was pleading guilty and stated that, because each of the thirty-three offenses carried a potential term of five years' imprisonment, the "total statutory maximum sentence would be 165 years in prison."

Schweitzer responded that he understood the agreement and the effects of his plea and still wished to plead guilty. The District Court found on the record that "the defendant is fully aware, competent and capable of entering an informed plea" and that "his plea is a knowing and voluntary plea." It accepted the plea, directed preparation of a presentence report, and scheduled sentencing proceedings.

2.

A sentencing hearing was held on January 27, 2005, two weeks after the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005). Argument centered on whether Schweitzer should receive credit for acceptance of responsibility, *see* U.S. Sentencing Guidelines Manual § 3E1.1, and whether he should be granted a downward departure based on criminal history, *see id.* § 4A1.3. Defense counsel asserted that Schweitzer had, by pleading guilty and offering to make full restitution, recognized his own complicity in the crimes and accepted responsibility. As to the request for a departure, counsel conceded that Schweitzer was properly assigned to

criminal history category V based on his five prior convictions,[1] but argued that this category over-represented the seriousness of his past offenses and the likelihood of recidivism, warranting a downward departure.[2]

Schweitzer testified in his own behalf. He acknowledged guilt of the crimes with which he was charged and indicated that he planned to make full restitution to the victims. On cross-examination, however, he admitted that he had not yet offered any restitution in this case and had not yet satisfied restitution obligations arising from his prior convictions, totaling nearly

[1]Counsel for the parties had premised their earlier stipulation, that Schweitzer should be assigned to criminal history category IV, on the assumption that Schweitzer's criminal history included only his two prior federal convictions. However, in preparing the presentence report, the probation officer uncovered two additional state convictions: one in 1995 for deceptive business practices and one in 2003 for passing bad checks. Counsel indicated during the sentencing hearing that they had been unaware of these offenses when the plea agreement was signed, and concurred that Schweitzer should be assigned to criminal history category V.

[2]The District Court agreed with defense counsel that the United States Sentencing Guidelines allow for a downward departure when the category over-represents the defendant's criminal history, *see* U.S. Sentencing Guidelines Manual § 4A1.3(b), but, notably, it pointed out that the Guidelines also allow for an upward departure when the category under-represents criminal history, *see id.* § 4A1.3(a).

$1 million.  He also insisted that he had, at the time of his offenses, intended to satisfy the debts owed to the third-party suppliers.

The District Court denied credit for acceptance of responsibility.  It noted that Schweitzer had not withdrawn voluntarily from his criminal activities and had not assisted law enforcement.  It also concluded that Schweitzer had, by asserting that he had always intended to repay the defrauded third parties, refused to accept fully his own culpability in the offenses.

The District Court also denied the request for a downward departure.  It found that, in light of the numerous victims of Schweitzer's crimes and his persistent failure to rehabilitate, his assignment to criminal history category V did not over-represent the "seriousness of his criminal history" or the "likelihood that he will commit other crimes."

The District Court determined, based on the presentence report, that Schweitzer should be assigned to an offense level of seventeen and a criminal history category of V.  The recommended range of imprisonment under the United States Sentencing Guidelines was forty-six to fifty-seven months.

Nevertheless, the final term of imprisonment imposed by the District Court was eighty-four months, nearly fifty percent above the recommend range.  It offered a lengthy justification for the sentence:

8

This case represents this defendant's third federal conviction and fourth overall for similar criminal behavior. Moreover, the offense was committed while the defendant was under supervision.

For more than the past twenty years, this defendant has involved himself in the acquisition of defense contracts . . . . [I]t is believed that the defendant may have been quite successful in operating such a business legitimately.

However, [he] decided that [one hundred] percent profit is better than any lesser amount of profit, and[,] as a result, at least [twenty-nine] companies have been victimized this time around, but over a hundred victims over the period of his prior convictions.

The defendant was barred from selling goods to the government directly or indirectly as a condition of his parole . . . and under the terms of his supervised released . . . . Despite this prohibition by court orders, the defendant was not deterred. He elicited the assistance of . . . [his codefendant] to lie to the probation officer . . . as a means of concealing his otherwise barred conduct.

. . . .

9

It appears that the defendant can successfully secure employment, despite his past criminal convictions. He has no history of substance abuse or mental or emotional problems. Despite having a little more than a high school education, the defendant is an intelligent and crafty individual.

Unfortunately, the defendant has repeatedly chosen to use his natural abilities to defraud businesses. Over the past [twenty] years it is estimated that he has committed at least $1 million in fraud . . . .

The District Court recounted the circumstances of the offenses and determined that, in light of Schweitzer's criminal history, a sentence above the range prescribed by the Guidelines was warranted:

In this case the sentence guidelines do not fully take into account the likelihood of recidivism of this defendant to repeat similar fraud upon his release. . . .

The defendant has already spent approximately eight to nine years in prison on the two previous convictions and nearly two additional years for parole violations. Over ten years of incarceration did not deter this defendant from committing these additional [thirty-three] offenses.

10

Moreover, the defendant has not shown any desire to pay any more than the bare minimum in restitution in the time that he has been out of prison. Rather he has shown a desire to live at a standard of living beyond his means, including driving expensive cars and spending hundreds of thousands of dollars on unknown items, yet paying only the minimum amounts directed by the Court on his large restitution amount . . . . The total of the fraud committed by the defendant then in the past [twenty] years is . . . nearly $1 million, and the defendant has shown that he will attempt to include anyone in his fraudulent schemes, including his own father, and his friends, and his girlfriend.

There is no indication that defendant will adhere to the [mores] of society if given a lesser sentence or a sentence within the guideline range.

The District Court concluded that a term of imprisonment of eighty-four months "reflects thorough consideration of all of the factors set forth in [18 U.S.C. § 3553] and represents the minimum sentence necessary to comply with the purposes of the sentence as set forth by Congress."

Following the imposition of sentence, the prosecution suggested that the District Court adopt "an alternative ground[]" for the judgment. Specifically, counsel argued that the District Court could find that the criminal history category to which Schweitzer was assigned under-represents the seriousness of his

11

criminal history and the likelihood of recidivism, warranting an upward departure of three offense levels and one criminal history category. *See* U.S. Sentencing Guidelines Manual § 4A1.3. This would result in an offense level of twenty and a criminal history category of VI, raising the recommended range of imprisonment to seventy to eighty-seven months. The District Court agreed, and amended its prior statement of reasons to "include th[is] articulation" as a basis for the final sentence.

## C.

This timely appeal followed. Schweitzer raises three issues: (1) that his plea was entered unknowingly and is thus invalid, (2) that the final sentence imposed by the District Court was "unreasonable," and (3) that the superseding indictment included "superfluous, irrelevant, and prejudicial language." We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *See United States v. Cooper*, 437 F.3d 324, 327-28 & n.4 (3d Cir. 2006).

## II.

The issues raised in this appeal implicate different substantive standards, but they hinge on a common theme: the sufficiency of the record developed by the District Court. The validity of the plea depends on whether the defendant was fully apprised of the ramifications of his plea; the reasonableness of the sentence turns on whether the District Court gave meaningful consideration to the factors of 18 U.S.C. § 3553(a); and the challenge to the superseding indictment may be reached

12

only if the defendant was not adequately informed of the appellate-rights waiver of his plea agreement.

A.

The constitutional requirement that a guilty plea be "knowing" and "voluntary" is embodied in Federal Rule of Criminal Procedure 11. *See*, *e.g.*, *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). The Rule outlines a series of admonitions and warnings to be provided to the defendant. Fed. R. Crim. P. 11(b)(1). The court must advise the defendant, inter alia, of the waiver of certain constitutional rights by virtue of a guilty plea, the nature of the charges to which he or she is pleading guilty, the "maximum possible penalty" to which he or she is exposed, the court's "obligation to apply the Sentencing Guidelines [and] . . . discretion to depart from those guidelines under some circumstances," and "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." *Id.* The district court must ensure that the defendant receives these caveats, understands them, and still wishes of his or her own volition to plead guilty. *Id.* 11(b); *see also*, *e.g.*, *Boykin*, 395 U.S. at 242-44.

The record in this case demonstrates full compliance with these requirements. During the colloquy with Schweitzer, the District Court described the nature and basis of the charges to which he was pleading guilty and the concomitant waiver of constitutional rights. It identified the statutory maximum penalty associated with each offense – five years' imprisonment – and the total maximum penalty to which he was exposed – 165 years' imprisonment. It stated repeatedly and clearly that the

13

stipulations of the parties – including those regarding criminal history – were not binding on it and would not control its findings of fact. Finally, it discussed the appellate-rights waiver of the plea agreement and detailed the limited circumstances in which those rights would be preserved.

After each matter was addressed, Schweitzer was asked whether he understood the principles at issue. He sometimes responded with specific inquiries and was provided with additional explanations. Never during the hearing did he indicate that he failed to grasp the ramifications of his plea, nor do his responses indicate any lack of awareness. The colloquy conducted by the District Court complied in every respect with Rule 11.

Defense counsel's arguments to the contrary are wholly baseless. Counsel asserts that the District Court failed to inform Schweitzer of the maximum possible penalty to which he was exposed. This is contradicted by the record of the plea hearing, which shows that the District Court advised Schweitzer that the "total statutory maximum sentence would be 165 years in prison." (A. 262-63.) Counsel also claims that Schweitzer was not told of the appellate-rights waiver of the plea agreement. Again, this is contravened by the record, which includes a lengthy recitation of the waiver and its effects on Schweitzer's right to appeal. (A. 267-69.)

Defense counsel's final contention, that Schweitzer was not adequately advised that the parties' stipulations would not bind the District Court, is similarly unsupported by the record. The plea agreement itself states that the stipulations of the

14

parties are not binding on the District Court, and the District Court reiterated this point several times during the hearing.[3] Schweitzer was informed repeatedly that the District Court could render factual findings differing from the parties' stipulations and that these contrary findings would provide no basis for him to withdraw the plea. Schweitzer indicated without qualification that he understood these explanations and still wished to plead guilty. (A. 255-57.)

The colloquy in this case conformed to Rule 11 and constitutional mandates. *See Boykin*, 395 U.S. at 242-44; Fed. R. Crim. P. 11(b). It reflects a voluntary, knowing, and intelligent waiver of rights and decision to enter a guilty plea. We will affirm the judgment of conviction.[4]

---

[3]*See also United States v. Vonn*, 535 U.S. 55, 62-74 (2002) (holding that courts may consider evidence outside of the plea colloquy in determining whether plea was knowing and voluntary).

[4]We also note that Schweitzer neither moved to withdraw his plea nor objected to the adequacy of the colloquy before the District Court. This not only calls his current challenge into doubt but would normally result in plain-error review. *See Vonn*, 535 U.S. at 62-74. However, even assuming that his objection had been properly preserved, we find no grounds to conclude that the plea was anything less than knowing and voluntary.

B.

We have held that, following the Supreme Court's decision in *Booker*, a sentence will be upheld as reasonable if "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 449 F.3d 558, 574 (3d Cir. 2006). This standard requires a deferential review of the record developed by the district court to determine whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors. *Id.*; *see also Cooper*, 437 F.3d at 330-32. That we may ourselves have imposed a sentence different from that of the district court, based on our own de novo assessment of the evidence, is no basis to overturn the judgment. *Cooper*, 437 F.3d at 330 (citing *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)).

The record in this case convinces us of the reasonableness of the sentence. The District Court discussed in great detail the circumstances underlying the offenses of conviction and Schweitzer's personal and criminal history. It conducted a proper Guidelines analysis and reached the appropriate recommended range based on a thorough evaluation of Schweitzer's claim for credit for acceptance of responsibility and request for a downward departure. It assessed the effect of Schweitzer's offenses on his family and the victims, his blatant disregard of prior orders of court, his failure to be deterred or rehabilitated despite prior terms of imprisonment and supervised release, and his dismissive attitude toward restitution obligations. The District Court weighed these considerations

16

and concluded that, to foster the purposes of the Sentencing Reform Act, including the promotion of respect for the law and deterrence of future offenses, *see* 18 U.S.C. § 3553(a), a term of imprisonment of eighty-four months was necessary.  There can be no doubt that the record reflects "rational and meaningful consideration" of the relevant statutory factors.  *See Grier*, 449 F.3d at 574.

Defense counsel complains that the sentence was above the range recommended by the Guidelines and by the parties.  This does not call into question the District Court's judgment.  The range recommended by the Guidelines is one of the factors to be assessed in the sentencing calculus, but, just as a sentence within that range is not presumptively reasonable, a sentence outside of it is not presumptively unreasonable.  *Cooper*, 437 F.3d at 331-32.  And, of course, a district court is in no way bound by the parties' sentencing recommendations.[5]  Indeed, perfunctory adoption of one party's position – or both, if the parties agree – would arguably violate the court's statutory duty to exercise "independent judgment" in its weighing of the relevant factors and crafting of the final judgment.  *See Grier*, 449 F.3d at 574.  The reasonableness of a sentence depends not on the district court's adherence to the range recommended by the Guidelines or the parties but on its adherence to the mandate of the Sentencing Reform Act to give meaningful consideration to the factors of 18 U.S.C. § 3553(a).  *See id.*; *Cooper*, 437 F.3d at 331-32.  The record in this case confirms that the District Court understood and discharged its statutory obligations.

---

[5]*But cf.* Fed. R. Crim. R. 11(c)(1)(C) (providing for plea agreements that bind district court).

We need not pass upon the District Court's alternative justification for the sentence: its holding that an upward departure based on criminal history was warranted. The District Court offered this explanation only after it had already weighed the relevant statutory factors – including the correct recommended range under the Guidelines – and had announced its sentence. The departure was plainly not an integral basis for the sentence but was merely a *post hoc* rationale for it; in other words, the same sentence would have been imposed whether or not the departure had been granted. Any error in this holding thus had no effect on the sentence and is properly deemed harmless.[6] *See*, *e.g.*, *United States v. Himler*, 355 F.3d 735, 743-44 (3d Cir. 2004); *cf. United States v. Hill*, 411 F.3d 425, 426 (3d Cir. 2005) ("[W]here . . . a District Court clearly indicates that an alternative sentence would be identical to the sentence imposed . . . any error that may attach to [the] sentence . . . is harmless."). Notwithstanding the alleged impropriety of the departure, we will affirm the sentence as reasonable.

---

[6]Schweitzer does not argue that he was not given adequate notice of the possibility of an upward departure, *see United States v. Himler*, 355 F.3d 735, 743-44 (3d Cir. 2004) (stating that notice of an upward departure is required under Federal Rule of Criminal Procedure 32(h)); *cf. United States v. Vampire Nation*, No. 05-1715, 2006 WL 1679385, at *4-5 (3d Cir. June 20, 2006) (differentiating between traditional departures under the Guidelines and variances from the Guidelines based on *Booker* and holding that notice of a variance is not required under Rule 32(h)), and we accordingly do not address the issue. *See also supra* note 2 (noting that District Court raised possibility of an upward departure).

C.

The final issue raised by defense counsel, challenging the inclusion of sentencing allegations in the superseding indictment, is easily dismissed.  The plea agreement signed by Schweitzer contains an express and unambiguous waiver of his right to appeal the judgment on any grounds other than claims of an illegal sentence or erroneous upward departure.  Schweitzer acknowledged this provision during the plea colloquy and was fully apprised of its effects.  We find no basis to refuse to enforce the waiver, which facially precludes his challenge to the indictment.  *See United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) ("Waivers of appeal, if entered knowingly and voluntarily, are valid, unless they work a miscarriage of justice.").

Moreover, notwithstanding this express waiver, Schweitzer's guilty plea effected an implicit waiver of the issue.  We have previously recognized that a guilty plea results in forfeiture of "those defenses not explicitly preserved by entering a conditional guilty plea."  *United States v. Panarella*, 277 F.3d 678, 689 (3d Cir. 2002).  While an exception exists for claims that the indictment fails to state an offense, *see id.* (citing Fed. R. Crim. P. 12(b)), the claim raised by Schweitzer in this appeal is not that the allegations of the indictment are insufficient but that they are excessive, presenting factual assertions irrelevant to the charged offenses.  This challenge was forfeited by Schweitzer's unconditional guilty plea.  *See id.*  We will not reach the issue.

III.

19

There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment. The record in this case exemplifies this principle. Through its extensive colloquy with the defendant and thoughtful weighing of the relevant sentencing considerations, the District Court provided a firm basis on which we can uphold the plea as knowing and voluntary and the sentence as reasonable.

For these reasons, the judgment of the District Court will be affirmed.