UNITED STATES of America

v.

**Maria NUNEZ, Appellant.**

**No. 08–3210.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 20, 2009.

Opinion Filed: Nov. 23, 2009.

---

George S. Leone, Esq., John F. Romano, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

Anthony J. Iacullo, Esq., Iacullo, Martino & Marzella, Nutley, NJ, for Appellant.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Appellant Maria Nunez pleaded guilty to conspiracy to commit food stamp fraud, and was sentenced to a forty-three month term of imprisonment. Her appeal is before us pursuant to 18 U.S.C. §§ 3557 & 3742(a) and 28 U.S.C. § 1291. We will affirm.

## I. BACKGROUND

On March 20, 2008, Maria Nunez pleaded guilty to an indictment charging her with knowingly and willfully conspiring with others to use, transfer, acquire, alter, and possess coupons, authorization cards, and access devices, contrary to 7 U.S.C. § 2024(b)(1), and in violation of 18 U.S.C. § 371. The conduct at issue was a scheme whereby Nunez, who owned and operated a Newark, New Jersey grocery store, instructed employees to make illegal cash distributions to customers in exchange for food stamps without selling grocery items. Nunez was arrested in 2000 and released on bail. She then absconded to the Dominican Republic, where she remained until December 29, 2007, when she was apprehended by U.S. Marshals. Since the time of her initial arrest, many of the subordinates in her scheme, some of whom included members of her family, have been convicted for their participation in the food stamp conspiracy.

On her return to the United States, Nunez entered into a plea agreement, which stated that the "offense involved losses totaling more than $500,000 but less than $800,000." (Appellant's App. at 12.) Based on this figure, the parties agreed that the "total Guidelines offense level applicable to defendant [Nunez] is 19." (*Id.* at 13.) Of course, the plea agreement was also clear that the "sentence to be imposed upon defendant is within the sole discretion of the sentencing judge . . . ." (*Id.* at 8.)[1] Furthermore, Nunez was informed

---

1. The plea agreement admonished that the prosecution "cannot and does not make any representation or promise as to what guideline range may be found by the sentencing

that the sentencing judge "may make independent factual findings and may reject any or all of the stipulations entered into by the parties." (*Id.* at 9.) At the Rule 11 hearing, the District Court confirmed with Nunez that "any stipulations or agreements between [she] and the Government as to what the applicable facts or Guideline suggestions are in this matter are not binding on the Court if the presentence report or other sources" demonstrated their inaccuracy. (Appellee's App. at 19.) Nunez confirmed her understanding, and the Court accepted her guilty plea.

At sentencing, the District Court reviewed the presentence investigation report, and noted that, of the total amount in food stamp benefits purchased by Nunez's store, "approximately $1,482,864 represented fraudulent, illegal, cash for benefits transactions." (Appellant's App. at 24.) The amount, $1,482,864, was much larger than the amount stipulated to in the plea agreement. The Court had used the $1,482,864 figure when calculating the guidelines for other members of the conspiracy, namely, the four cashiers from Nunez's store, and it declined to make an exception for Nunez, especially when it was she who orchestrated the scheme, evaded trial and sentencing for years after having fled to the Dominican Republic, and made no showing that the presentence report's figure was inaccurate. As a result of using the $1,482,864 figure, there was an eleven-level increase in the base offense level instead of the ten-level increase that would have resulted from using the figure agreed to in the plea agreement.[2]

Ultimately, Nunez's total offense level was calculated to be 22, and her criminal history category was I. The District Court imposed a sentence of forty-three months' incarceration, which was within the Guideline range found by the Court. Nunez appeals, challenging the eleven-level increase in her base offense for the amount of loss and the substantive reasonableness of her sentence.

## II. DISCUSSION

Nunez contests the eleven-level increase for the following reasons: first, the government agreed that the loss amount was no greater than $800,000; second, the presentence report describes the $1,482,864 figure as merely an approximation; and third, Nunez never admitted to, nor has there been any demonstration via bank records of, loss greater than $800,000. She argues, also, that her age and health problems, as well as the lighter sentences served by her co-conspirators, justified a shorter sentence pursuant to 18 U.S.C. § 3553.

We review the District Court's factual findings as to the amount of loss for clear error. *United States v. Brennan,* 326 F.3d 176, 194 (3d Cir.2003); *United States v. Cherry,* 10 F.3d 1003, 1009 (3d Cir.1993) (district court's factual findings overturned only if clearly erroneous). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier,* 475 F.3d 556, 570 (3d Cir.2007) (internal marks omitted). The amount of loss need not be exact, and the sentencing court "need only make a reasonable estimate of the loss, given the available information," *United States v. Jimenez,* 513

---

judge, or as to what sentence defendant ultimately will receive." (*Id.*)

**2.** Nunez was sentenced according to the Sentencing Guidelines effective November 1, 1998. The controlling Guideline at the time, U.S.S.G. § 2F1.1, has since been deleted.

F.3d 62, 86 (3d Cir.2008) (quoting U.S.S.G. § 2F1.1 cmt.).

■ Nunez's first argument, that the District Court should have adopted the loss amount set out in the plea agreement because the government agreed to it, can be dispensed with quickly. The plea agreement repeatedly warns that its terms do not bind the Court. In plain language, it notes that the sentencing judge "may make independent factual findings and may reject any or all of the stipulations entered into by the parties." (Appellant's App. at 9.) That the government chose to hold Nunez accountable for a lesser loss amount is irrelevant, particularly when the evidence does not suggest that the loss amount found by the Court was erroneous. *See United States v. Schweitzer*, 454 F.3d 197, 203 (3d Cir.2006) (upholding guilty plea where defendant was informed in both the plea agreement and during a court hearing that the stipulations of the parties are not binding on the court).

We also reject Nunez's argument that the loss amount was both merely approximate and unexplained. By the time the District Court used the higher figure to sentence Nunez, it had already applied the same loss figure when sentencing her co-conspirators. Indeed, we recently determined that the Court's reliance on the $1,482,864 loss amount as to one of Nunez's co-conspirators was not clearly erroneous. *United States v. Nunez–May*, 225 Fed.Appx. 85, 90–91 (3d Cir.2007).[3]

Furthermore, Nunez has not called the $1,482,864 figure into question. At sentencing, her counsel stated, "I am not going to say one calculation is wrong." (Appellant's App. at 29.) He went on to argue that the loss amount stipulated to in the plea agreement should be adopted because, after "extensive negotiations," the government determined that in Nunez's case it was "accurate, fair, reasonable, and just." (*Id.* at 28–30.) Absent even an allegation, much less evidence, that the loss figure in the presentence report was inaccurate, the District Court was justified in relying on it.

Nunez also attempts to cap the amount of loss by arguing that she has never admitted to, nor has there been any demonstration via bank records of, loss resulting over $800,000. As noted above, the $1,482,864 loss amount has not been seriously questioned, and we will not reprise our discussion here. With respect to Nunez's claim that in her plea agreement and at the Rule 11 hearing she only accepted responsibility for a maximum loss of $800,000, this claim is also without merit. Nunez's guilty plea was not conditioned on the District Court's acceptance of the stipulations in the plea agreement. Schedule A of the plea agreement lists "losses totaling more than $500,000 but less than $800,000," but the plea agreement itself states that the stipulations in Schedule A "cannot and do [ ] not bind the sentencing judge, who may … reject any or all of the stipulations entered into by the parties." (Appellant's App. at 9, 12.) *United States*

3. We make reference to this non-precedential opinion not because it binds our conclusion here, as it cannot, but because knowing the sentencing histories of co-conspirators furthers the goal of reaching predictable results in like cases. Arthur D. Hellman, *Jumboism and Jurisprudence: The Theory and Practice of Precedent in the Large Appellate Court*, 56 U. Chi. L.Rev. 541, 544 (1989) (building on the principle that "a high degree of consistency and predictability in the law is necessary to the successful operation of the legal system"). We note that the defendant in *Nunez–May* was held responsible for only a percentage of the total loss, whereas, in this case, Nunez was held responsible for the entire loss. This distinction results from the differing roles that the two individuals played in the scheme, and Nunez does not challenge on appeal her status as the organizer or leader.

*v. Uddin,* a case involving a similarly situated food stamp fraud defendant, is instructive. 551 F.3d 176, 178 (2d Cir.2009). In *Uddin,* the defendant admitted during his plea colloquy that he exchanged food stamps for cash in excess of $5,000. When the government argued that the loss amount was in excess of $1 million, the defendant maintained that there was no evidence to support a loss calculation beyond the $5,000 amount "he had admitted at his plea." *Id.* At sentencing, the District Court calculated a loss amount of $377,779. The Court of Appeals for the Second Circuit upheld the sentence despite the fact that the defendant was held liable for a loss amount greater than that to which he admitted. *Id.* at 180–81.

■ Finally, Nunez points to a myriad of other factors that, she maintains, justified a lighter sentence. She explains that she is in poor health, that she has no prior criminal history, that other co-conspirators in the fraud were given lighter sentences, and that she is likely to be deported upon being released from prison. The District Court considered these factors, and, with respect to Nunez's diabetes, noted that it had "every confidence that the Bureau of Prisons will adequately attend to [her] needs." (Appellant's App. at 50.) Nunez was deemed to be a "mature," "intelligent" businesswoman who purposefully engaged in a scheme intended to defraud a public program organized to protect those less fortunate in our society. The Court found Nunez's willingness to flee the country and lie to probation officials as troubling signs of the "serious disrespect" that she continues to harbor for the criminal justice system. (*Id.* at 48.) Finally, the Court found that Nunez was deserving of a heavier sentence than her co-conspirators because her role in the scheme was far greater and her "obstruction of justice was more serious...." (*Id.* at 45.) Nunez may now

dispute these conclusions, but she cannot dispute that many of the factors she now presents as reasons for a lighter sentence were reasonably considered. On the contrary, each one was given thoughtful consideration, as were the other factors referenced in 18 U.S.C. § 3553(a). It would be disingenuous to assert that "no reasonable sentencing court would have imposed the same sentence ... for the reasons the [D]istrict [C]ourt provided." The sentence imposed was substantively reasonable. *See United States v. Tomko,* 562 F.3d 558, 568 (3d Cir.2009) (en banc); *see also United States v. Wise,* 515 F.3d 207, 218 (3d Cir.2008) ("As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm.").

The judgment of sentence will be affirmed.