**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-4512
_____

UNITED STATES OF AMERICA

v.

MIKELL NESBITT,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 09-cr-00181)
District Judge: Hon. Harvey Bartle, III

Submitted March 18, 2011

Before: BARRY, CHAGARES, and ROTH, Circuit Judges.

(Filed: March 18, 2011)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Defendant Mikell Nesbitt appeals the sentence imposed upon him by the District

Court after he pleaded guilty to one count of being a felon in possession of a firearm, in

violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the essential facts. On August 19, 2009, Nesbitt pleaded guilty to a one-count indictment, charging him with possession of a firearm as a previously convicted felon. During his plea colloquy, Nesbitt admitted that on October 25, 2008, he visited a female acquaintance who is the legal owner of two guns. While in her home, he stole her Glock 9-millimeter pistol from underneath her bed. Nesbitt was taken into custody on October 28, 2008, after Philadelphia police recovered this gun during the execution of search and arrest warrants at his residence. Nesbitt waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and admitted stealing the Glock pistol.

The Probation Office prepared a Presentence Investigation Report ("PSR"), in which it determined that, pursuant to the United States Sentencing Guidelines (the "Guidelines"), the base offense level was 24. Nesbitt was subject to a two-level enhancement, however, because the firearm was stolen. Taking into account a three-level reduction for acceptance of responsibility, the total offense level was 23. The PSR additionally concluded that Nesbitt qualified for a criminal history category of V, based upon his extensive criminal record, which included two drug-trafficking convictions, as well as convictions for robbery, drug possession, vandalism, and driving under the influence. Nesbitt's advisory Guidelines sentence range was, therefore, 84 to 105 months of imprisonment. Both parties agreed that this was the appropriate advisory Guidelines range. At the time of sentencing, Nesbitt was serving a state sentence of eight to sixteen years of imprisonment for two armed robberies, to which he had also pleaded guilty.

At the sentencing hearing, the District Court first heard from the Government. The Government drew attention to the fact that Nesbitt began committing crimes at the age of 16 and that during the month of October 2008, at the age of 31, Nesbitt had not only committed the crime at issue in this case, but also had committed an armed home invasion robbery, during which he sexually touched the homeowner, and an armed robbery of a 7-Eleven convenience store, in which he made the store clerk kneel on the stockroom floor while Nesbitt held a gun to the clerk's head and demanded money. At the time of these offenses, Nesbitt was on bail for two separate crimes — retail theft and vandalism.

The Government also reminded the District Court that Nesbitt had attempted to provide assistance to the authorities during a proffer session. Although the assistance fell short of that which would warrant a Government motion for a downward departure, the Government suggested that the District Court could consider it in mitigation under 18 U.S.C. § 3553(a). Nonetheless, based upon Nesbitt's extensive criminal record, his escalating level of violence, and the need for specific and general deterrence, the Government asked the District Court to impose a sentence at the top of the advisory Guidelines range, which would be served consecutively to the state sentence.

The District Court then heard from the defense. Nesbitt called his mother as a witness on his behalf. She pleaded for leniency, stating that Nesbitt was extremely dedicated to his children and provided care and support to the best of his ability to his extended family. She stated that Nesbitt committed these crimes because he "just got mixed up, just got stressed out, he was so stressed not being able to support his children

3

and his family." Appendix ("App.") 55. She testified that another judge threatened to incarcerate Nesbitt if he continued to fail to meet his child support obligations. Thus, Nesbitt "was trying to get the money from somewhere." App. 54. She stated that Nesbitt had started smoking "wet"[1] and that he wasn't acting like himself. App. 54-55. During this testimony, the District Court interjected on occasion to ask clarifying questions.

Nesbitt's counsel argued that Nesbitt had a very long history of drug abuse that was, in essence, a way of self-medicating otherwise untreated depression. Counsel suggested that the combination of drugs, depression, and a need for money led Nesbitt to commit the crime for which he was convicted.

Counsel further argued that Nesbitt should not receive a lengthy federal sentence because, had Nesbitt been prosecuted in state court for the firearm offense, the additional count may not have caused a significant increase in the sentence that he received for the armed robberies. Defense counsel also summarized the information that Nesbitt had provided to the Government in an attempt to assist with other investigations, arguing that these efforts on Nesbitt's part militated in favor of a lenient sentence.

Ultimately, Nesbitt's counsel asked the court to impose either a sentence at the very bottom of the advisory Guidelines range to run largely concurrently to Nesbitt's state sentence or to impose a sentence well below the advisory Guidelines range — two and one-half years — to run consecutively to his state sentence. Before imposing its sentence, the District Court engaged defense counsel in a line of questioning regarding

[1] "Wet" is a slang term for a cigarette made from a mixture of marijuana and Phencyclidine ("PCP").

4

the impact that a concurrent, as opposed to a consecutive, sentence might have on Nesbitt's ability to receive parole on his state sentence.

Finally, the District Court heard from Nesbitt himself, who apologized for his criminal actions. Nesbitt explained: "I lost my job which caused me not to be able to care for my children, my mother and my grandmother, and my bills…. [T]hat hurt my pride and my ego. . . . I fell weak to drugs." App. 73.

After hearing from the parties, the District Court properly calculated the applicable advisory Guidelines sentence range of 84 to 105 months, then imposed a sentence at the very bottom of that range to run consecutively with his state sentence, stating in pertinent part:

> [I]n fashioning a sentence, I must fashion one that is sufficient but not greater than necessary. And under Title 18 United States Code Section 3553(a), I must take into account certain factors before determining your sentence. Those factors include the nature and circumstance of the offenses, and history and characteristics of you, the defendant; the seriousness of the offense; the need to promote respect for the law; the need to provide a just punishment for the offense; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of you the defendant.
>
> Needless to say, Mr. Nesbitt, the crime for which you have pleaded guilty is a serious one. A firearm in possession of a convicted felon is a menace to the city of Philadelphia in this region, and to all the citizens who live here. The safety of the community is a very critical issue these days, and people such as yourself who are carrying firearms undermine the safety of our community, and indeed the general welfare of our community. So there's no doubt that your crime is a serious one. . . .
>
> You have a very long criminal history for a man who's 31 years old. Not only do you have several drug convictions, but you also have two robbery convictions. In each case, you possessed a firearm. . . .
>
> Your mother talked about your children, how important they are to you. You have to remember that that woman who faced a gun and the clerk in the convenience

5

store who faced a gun on his head, they're also the children of people. And you weren't thinking about that, and I can't imagine you would be happy if someone did that to one of your children. . . .

You didn't learn your lesson when you were sentenced previously in the Court of Common Pleas for your drug offenses, and then the crimes escalated and turned into robbery.

Society has to be protected from you, Mr. Nesbitt. And under the totality of the circumstances, I'm going to commit you into the custody of the Attorney General of the United States for a period of imprisonment of 84 months. That sentence will be consecutive to your sentence by the judge of the Court of Common Pleas. . . .

It's truly a sad day, Mr. Nesbitt, and I feel for your mother who was here to support you and who did her best. Unfortunately, sometimes in these sentencing cases, the family members are punished just as much as the person who commits the crime. That's an unfortunate consequence, and there's noting that we can do about that. So think about that as you serve your sentence. And I hope when you are finally released, you will become a law-abiding citizen and take care of your children and be a credit to society. But until that time, you will have to serve your sentence.

App. 74-78.

## II.

The District Court properly exercised jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the District Court's final judgment of sentence pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

Pursuant to the mandate of United States v. Booker, "[t]he courts of appeals review sentencing decisions for unreasonableness." 543 U.S. 220, 264 (2005). According to our post-Booker precedent, district courts must follow a three-step sentencing process:

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

6

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

(3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors, in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (citations, quotations, and brackets omitted). On appeal, Nesbitt takes issue with the District Court's consideration of the relevant § 3553(a) factors at the third step of the sentencing process. Nesbitt contends that the District Court's failure to consider essential aspects of his history and character, as required by 18 U.S.C. § 3553(a)(1), rendered the sentence imposed upon him procedurally unreasonable.

III.

We have made clear that a sentence "will be upheld as reasonable if the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Schweitzer, 454 F.3d 197, 204 (3d Cir. 2006) (quotation omitted). This "standard requires a deferential review of the record developed by the district court to determine whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicial consideration of the relevant factors." Id.

"After settling on the appropriate sentence, [the District Court] must adequately explain the chosen sentence to allow for meaningful appellate review. In other words, it

7

is not enough for the district court to carefully analyze the sentencing factors. A separate and equally important procedural requirement is <u>demonstrating that it has done so</u>." <u>United States v. Merced</u>, 603 F.3d 203, 215 (3d Cir. 2010) (quotations and citation omitted). As such, the sentencing judge is obligated to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." <u>Rita v. United States</u>, 551 U.S. 338, 356 (2007) (citing <u>United States v. Taylor</u>, 487 U.S. 326, 336-37 (1988)). Still, the District Court need not make explicit findings as to each of the §3553(a) factors "if the record otherwise makes clear that the court took the factors into account." <u>United States v. Lessner</u>, 498 F.3d 185, 203 (3d Cir. 2007). A brief discussion will suffice where it is apparent from the record that the District Court "determined that defendant's arguments were simply insufficient to warrant a below-Guidelines sentence." <u>United States v. Olfano</u>, 503 F.3d 240, 245 (3d Cir. 2007).

At sentencing, defense counsel argued in favor of a sentence far below the advisory Guidelines range, urging the District Court to consider Nesbitt's personal history and characteristics — his depression, his lengthy history of drug abuse, his commitment to his family, and his efforts to assist authorities in other investigations — in mitigation. On appeal, Nesbitt argues that the District Court's sentence was procedurally unreasonable because it ignored these potentially mitigating factors, instead improperly emphasizing the seriousness of the present offense and Nesbitt's extensive criminal history. We disagree.

The record summarized above makes clear that the District Court heard and considered Nesbitt's arguments at sentencing. Indeed, the District Court engaged Nesbitt's mother with questions pertaining to her testimony about the defendant's personal circumstances. In our view, such a record does not suggest that the District Court disregarded or ignored the evidence in favor of leniency; rather, it demonstrates that the District Court took account of the mitigating evidence and ultimately came to a reasoned, albeit partially implicit, conclusion that, despite Nesbitt's arguments to the contrary, his conduct over the years was that of a serious recidivist, not that of a person who had merely lost his way, and that certain § 3553(a) factors — namely, the seriousness of the offense, the need for individual deterrence, and the interest in protecting the public from the defendant's future crimes — substantially outweighed the potentially mitigating factors that Nesbitt pointed to in support of a below-Guidelines sentence. In other words, in finding that a sentence at the bottom of the Guidelines range was sufficient, but not greater than necessary to effect the appropriate amount of deterrence and to reflect the seriousness of the crime, the District Court implicitly expressed a reasoned judgment that the arguments it had heard and considered in favor of leniency "were simply insufficient to warrant a below-Guidelines sentence." Olfano, 503 F.3d at 245. The District Court having premised the sentence on appropriate and judicial consideration of the relevant factors, we cannot conclude that the sentence imposed upon Nesbitt was procedurally unreasonable.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.