NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1779

_____

UNITED STATES OF AMERICA

v.

MARTIN SCOTT WOLFE,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00380-001 & 2-10-cr-00500-001)
District Judge:  Honorable Stewart Dalzell

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 23, 2012

Before:  RENDELL, FISHER and CHAGARES, *Circuit Judges*.

(Filed: April 5, 2012)

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Martin Scott Wolfe ("Wolfe") appeals from his conviction and sentence in the

U.S. District Court for the Eastern District of Pennsylvania.  For the reasons stated below,

we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 2003, Wolfe was convicted in the U.S. District Court for the Southern District of Florida for knowingly transporting an individual in interstate commerce with the intent to engage in prostitution, in violation of 18 U.S.C. § 2421. Wolfe pleaded guilty, and was sentenced to 100 months' imprisonment, to be followed by three years of supervised release. In August of 2009, Wolfe was released from prison and returned to his mother's home in Philadelphia to begin his term of supervised release. Because his 2003 conviction involved the solicitation of a minor to practice prostitution, Wolfe was required to register as a sex offender in his state of residence pursuant to the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901 ("SORNA"). Wolfe registered his status and local address (his mother's residence) with the Pennsylvania State Police. He was informed that he was required to notify the Pennsylvania State Police within 48 hours of any change in residence, and that he was required to register in any new state of residence within 48 hours.

After Wolfe missed two appointments for drug testing with the Probation Office, his probation officer visited his mother's Philadelphia residence and discovered that he had left one week prior. On January 13, 2009, Wolfe's probation officer filed a petition to revoke Wolfe's supervised release for failing to comply with random drug testing and

2

failing to notify the Probation Office of his change in residence. A warrant was issued for his arrest. Wolfe was arrested two months later in Egg Harbor Township, New Jersey, for operating an unregistered vehicle. At that time, he was residing in Atlantic City, New Jersey.

On June 10, 2010, a grand jury returned an indictment against Wolfe charging him with one count of failing to register as a sex offender, as required by SORNA, in violation of 18 U.S.C. § 2250. The then-pending revocation of Wolfe's supervised release was transferred to the Eastern District of Pennsylvania. On November 18, 2010, Wolfe entered a plea of guilty for violating SORNA, pursuant to a plea agreement. Under the agreement, Wolfe waived his right "to appeal or collaterally attack [his] conviction, sentence or any other matter relating to [the] prosecution," subject to four limited exceptions. The plea agreement provided that the government could "[m]ake whatever sentencing recommendation as to imprisonment [for the SORNA violation] . . . which [it] deem[ed] appropriate." The agreement further authorized the government to:

> "Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing."

However, the government also committed to "agree that whatever sentence [was] imposed [for Wolfe's SORNA violation] is to run concurrent to any sentence that may be

3

imposed . . . for a pending violation of [Wolfe's] federal supervised release." During the

plea colloquy, the District Court reviewed these provisions with Wolfe, who indicated

that he understood them. The District Court made clear that the plea agreement was only

binding as between the parties, and therefore did not bind the District Court.

At the sentencing hearing, the District Court first addressed Wolfe's SORNA

violation. The Court heard extended argument from both the government and Wolfe

regarding the appropriate length of the sentence. The government strenuously advocated

for a 37-month sentence, at the top of the Guidelines range. In its presentation, the

government emphasized Wolfe's numerous prior offenses, which included three sex

offenses, the severity of his prior offenses, the fact that he had knowingly violated

SORNA while on supervised release, and the certainty that he would reoffend. The

government did not otherwise mention the supervised release violation. After hearing

Wolfe's argument and testimony, the District Court imposed a 36-month sentence.

The District Court then turned to the sanction for Wolfe's violation of supervised

release, and inquired whether that sentence should be imposed consecutively or

concurrently to Wolfe's SORNA sentence:

> THE COURT: So what's the Government's view about the
> consecutive/concurrent issue? Because I think there is an agreement on
> this, isn't there?
> THE GOVERNMENT: There is, sir, and I'm at a loss to be able to – I'm at
> a loss to be able to explain that. I was not the prosecutor initially on the
> case. I was asked to come in for sentencing purposes, so I did not negotiate
> that particular part of the plea agreement. I am told that it was –
> THE COURT: Well, it was negotiated.

4

> THE GOVERNMENT: It was something that was negotiated in order to get the agreement in this case.
>
> THE COURT: Okay, but in terms of the authority of the Court, you would agree with me that that's a different issue from the issues that we just spent an hour and a half plus –
>
> THE GOVERNMENT: Absolutely.
>
> THE COURT: – worrying about? Wouldn't you agree?
>
> THE GOVERNMENT: Yes, sir.
>
> THE COURT: Okay. But, obviously, you're bound by your agreement and I'm not going to ask you to retreat from that.

After further discussion with Wolfe's counsel, the Court revoked Wolfe's supervised release and imposed a 12-month sentence to be served consecutively to Wolfe's sentence for the SORNA violation. Wolfe filed a timely appeal.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Wolfe appeals the District Court's imposition of consecutive sentences on the grounds that the government's conduct at sentencing violated his plea agreement, and that, consequently, he must be resentenced. In the absence of a contemporaneous objection, we review the government's adherence to its obligations under a plea agreement for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Under plain error review, Wolfe must show that (1) there was an error which was (2) "clear or obvious," (3) "affected the outcome of the proceedings," and (4) "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks and

5

citations omitted).  We review the validity of an appellate waiver de novo.  *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

III.

We would normally decline to exercise jurisdiction over Wolfe's appeal because it is not permitted under his appellate waiver.  *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007).  The record reveals that Wolfe's plea is valid:  it was entered into knowingly and voluntarily, and the sentencing judge fully complied with Rule 11 of the Federal Rules of Criminal Procedure.  *See Khattak*, 273 F.3d at 563.  Moreover, none of the four exceptions to Wolfe's appellate waiver are implicated here,[1] and Wolfe does not argue that the result "would work a miscarriage of justice."  *Gwinnett*, 483 F.3d at 203.  Thus, the parties do not dispute that, if enforced, the waiver would not permit an appeal of this within-Guidelines sentence.

Nevertheless, it is well-established that "[a] defendant's appellate waiver is not enforceable if the government breaches its own obligations under a plea agreement." *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008) (citation omitted). Accordingly, Wolfe offers two arguments that the government breached its promise to

---

[1] The exceptions to Wolfe's appellate waiver are:  (1) Wolfe may filed a direct appeal from his sentence if the government appealed from the sentence; (2) Wolfe may assert a claim that the "sentence on any count of conviction exceeds the statutory maximum for that count"; (3) may could assert a claim that "the sentencing judge erroneously departed upwards under the U.S. Sentencing Guidelines"; or (4) Wolfe may assert a claim that the sentencing judge "imposed an unreasonable sentence above the final Sentencing Guidelines range.

6

"agree that whatever sentence is imposed [for Wolfe's SORNA violation] is to run concurrent to any sentence that may be imposed for a violation of [Wolfe's] federal supervised release." First, he contends that the prosecutor used her sentencing argument for Wolfe's SORNA violation to advocate in favor of consecutive sentences. Second, he argues that the prosecutor's response to the District Court concerning the recommendation for concurrent sentences effectively undermined the government's commitment.[2] Wolfe's challenges fail.

Our task is to "evaluate the [challenged] conduct and determine whether it violates the government's obligations under the plea agreement." *United States v. Larkin*, 629 F.3d 177, 186 (3d Cir. 2010). We interpret the plea agreement according to "general principles of contract law," *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 95-96 (3d Cir. 2007) (citation omitted), and, mindful of the government's "tremendous bargaining power," we "strictly construe the text against [the government]." *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000). We do not review the allegedly violated provision in isolation, but rather with an eye towards the agreement as a whole. *See Larkin*, 629 F.3d at 189-91; *Schwartz*, 511 F.3d at 405-06. The ultimate decision of the District Court to disregard the agreement is, of course, irrelevant to our inquiry, because a plea agreement binds only the parties. *United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir. 2006).

---

[2] Wolfe also asserts that he may appeal the sentence because there is no plea agreement governing the revocation of his supervised release. However, he offers no argument to revisit the sentence that is independent of the alleged breach.

First, we reject Wolfe's contention that the government used its sentencing arguments in the SORNA portion of the hearing to persuade the District Court to impose consecutive sentences. The entire premise of this argument rings hollow, because the District Court treated the sentencing for the SORNA and supervised release violations as distinct issues. The District Court and the government agreed that the decision to impose consecutive or concurrent sentences was "a different issue from the issues that [the parties] had just spend an hour and a half plus . . . worrying about." Moreover, the arguments offered by the government were expressly permitted by the plea provisions allowing the government to comment on "all facts relevant to sentencing," and therefore fell "within the range of expectations reasonably understood by [Wolfe] when [he] entered [his] plea of guilty." *Larkin*, 629 F.3d at 186; *see id.* at 189-91 (finding government's briefing on sentencing enhancement permissibly "provided an assessment of the law and relevant facts that would support application of the enhancement" pursuant to plea provisions allowing response to court's request for briefing, despite stipulation that enhancement was inapplicable). Accordingly, we are not persuaded that the initial SORNA sentencing discussion – which was entirely proper – can be understood as violating the government's obligations to agree to a concurrent sentence for Wolfe's violation of supervised release.

Second, the prosecutor's response to the District Court's inquiry regarding the concurrent sentence recommendation was not inconsistent with her promise to "agree" to

8

a concurrent sentence. Wolfe is correct that the government may breach a plea agreement with statements that either contradict or implicitly undermine its obligations. *See United States v. Hodge*, 412 F.3d 479, 486-87 (3d Cir. 2005) (finding prosecutor's repeated statements that defendant should not be released into community plainly amounted to recommendation for a life sentence and contradicted obligations under plea agreement to request sentence within Guidelines range). And viewed alone, the prosecutor's statement that she was "at a loss to be able to explain" the basis for the agreement is admittedly ambiguous. However, we must construe the challenged statements in context and "against the entire backdrop of the proceedings," *Larkin*, 629 F.3d at 191, and fairly construed, the prosecutor was simply attempting to explain that she was unfamiliar with that provision of the plea agreement. The response of the District Court – which cut off the prosecutor's explanation of the government's agreement – is informative in this regard. *See United States v. Ahn*, 231 F.3d 26, 38 (D.C. Cir. 2000) (explaining that a district court is in the best position to understand the meaning of a party's conduct and statements responding to the court's requests). Here, the District Court responded by expressly recognizing the prosecutor's commitment to agree to a concurrent sentence and stated that it would not ask the prosecutor to retreat from that commitment. This strongly suggests that the prosecutor's comment should not be interpreted as a retreat from the plea agreement.

Thus, viewed in context, we cannot say that the prosecutor's truncated remarks were a "thinly veiled attempt to . . . influence the District Court." *Larkin*, 629 F.3d at 191. Nor did this brief utterance implicitly undermine the very position the government had committed to adopt, as the repeated statements did in *Hodge*. *See* 412 F.3d at 486-87. The prosecutor may not have spiritedly advocated for a concurrent sentence, but the plea provisions did not require her to do so. She was obligated to agree, and we do not understand her conduct to be inconsistent with that obligation.

Moreover, Wolfe's argument attacks the prosecutor's honest response to the District Court's questioning, which a prosecutor's ethical obligations require of her. *See United States v. Allen*, 434 F.3d 1166, 1175 (9th Cir. 2006) ("[A] plea agreement does not bar the government from honestly answering the district court's questions. To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement." (marks and citation omitted)). We will not penalize the government for adhering to such obligations. In sum, the prosecutor's truncated remarks – though perhaps not as effective as Wolfe might desire – do not amount to a breach of the plea agreement.

IV.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.